## ESTATE OF JOHN LAWRENCE, DECEASED.

APPEAL BY S. APPLETON ET AL. FROM THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

Argued March 28, 1890—Decided October 6, 1890.
[To be reported.]

1. When the donee of a power to appoint, by will, real estate situated in Pennsylvania, dies domiciled in another state, leaving a will containing an appointment of such realty, and which is probated in the forum of the domicile, the validity of the appointment so made, as an execution of the power, is to be determined by the law of Pennsylvania.

2. The rule against perpetuities, to wit, that no interest, subject to a condition precedent, is good, unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the interest, is unmodified by statute, except as § 9, act of April 18, 1853, P. L. 507, and § 12, act of April 26, 1855, P. L. 332, operate in restraint of accumulations.

3. When a power of appointment is given, either by deed or will, the rule applies as well to the power as to the appointment; and, if made exercisable at a time beyond the limits of the rule, the power is bad: but, when it must be exercised, if at all, within the legal limit, it will not be rendered void by the fact that, within its terms, an appointment might possibly be made which would be too remote.

4. Except when the donee of the power has absolute control, so that he can appoint to himself, or to any other person to take in his lifetime, and therefore is practically the owner, the remoteness of the estate ap

Statement of Facts.

pointed must be measured from the time of the creation of the power, and no estate can be limited thereunder which would have been too remote if limited in the instrument creating the power.

5. When the donee of a power to devise, who was in being at the creation of the power, appoints by will, in trust for life-tenants to take at his death, with remainder over, such appointment for life will be good, whether the appointees for life were born before or after the creation of the power, and even if the estate appointed in remainder be too remote : Smith's App., 88 Pa. 492, overruled in part.

6. If the estate in remainder, appointed by such donee, is vested at his death, its enjoyment merely being postponed until the determination of a preceding vested estate for life, the rule against remoteness, which has regard to the time when the estate vests so as to be disposable by the grantee or devisee, is satisfied : Smith's App., 88 Pa. 492, doubted but distinguished.

7. Under a general power of appointment, authorizing the donee to " grant and convey the real estate in fee . . . . . in such parts or shares " as he may by his will direct, but giving no express authority to declare trusts, the donee may appoint the fee to trustees for the benefit of certain persons for life, with remainder over in fee, observing in such appointment the rule against remoteness.

Before PAXSON, C. J., GREEN, CLARK, McCOLLUM and MITCHELL, JJ.

No. 118 January Term, 1890, Sup. Ct.; court below, No. 53 April Term 1889, O. C.

On April 20, 1889, on petition of Ann E. A. Griffin, the court below awarded a citation to Elizabeth H. Appleton and others, requiring the respondents to show cause why the Union Trust Company should not be appointed trustee under the will of John Lawrence, deceased, in accordance with an appointment prescribed by the will of Ann Appleton, deceased, in pursuance of provisions contained in the will first mentioned. On May 6, 1889, a supplemental petition was filed, whereupon the court directed that a citation issue to the original respondents, and also to Henry Pomerene, to show cause why, upon the appointment of a trustee as prayed for in the original petition, and the entry of his bond, said Henry Pomerene should not transfer to such trustee all papers and property in his hands belonging to the trust estate.

The following facts appeared from the petitions and the answers of the respondents thereto :

John Lawrence died in 1847, domiciled in Philadelphia, leav-

Statement of Facts.

ing a will, duly admitted to probate, by which he bequeathed and devised his estate, real and personal, to trustees, upon trusts which were declared therein as follows:

"1st. In trust to keep the real estate in repair and rented, and the personal estate securely invested, and to change the mode of investment whenever it may be discreet to do so.

"2d. In trust to pay the net income of the said real and personal estate to my well beloved and most dutiful daughter, Ann Appleton, wife of James Appleton, of New York, in half-yearly payments, in each and every year as long as she shall live, upon her own receipts and free from the control of her husband, and from all liability for his debts or responsibilities.

"3d. In trust upon the decease of my said daughter Ann, to grant and convey the said real estate in fee, and to assign, transfer and deliver the said personal estate, to such person or persons and in such parts or shares, as she, my said daughter Ann, shall by her last will (made during the lifetime of her husband or otherwise) direct to have and to be the receiver or receivers of the said real and personal estate or shares thereof.

"4th. In trust in case my said daughter Ann shall die intestate, to grant and convey the said real estate in fee, and to assign, transfer and deliver the said personal estate to my grandchildren her surviving and the issue of any of my grandchildren, who may have died before her, equally among them share and share alike, but the issue of any grandchild who may have died before my daughter Ann, shall have (equally among them if more than one) only the share which the parent would have had if he or she had survived my said daughter."

In August, 1860, the trustees named in said will were removed for cause by the Orphans' Court, and Henry Pomerene and George W. Appleton were appointed trustees in their place and stead. By a devastavit of the original trustees, all the trust property except certain real estate in Philadelphia had been lost.

In the year 1883, the testator's daughter, Ann Appleton, died in Camden county, New Jersey, wherein she was then domiciled, leaving a will dated March 19, 1881, which was duly admitted to probate before the surrogate of Camden county, and letters testamentary thereon granted to George W. Appleton whom the testatrix therein named as her executor. Her

### Statement of Facts.

will recited the devise and bequest made by the will of John Lawrence, as aforesaid, and the devastavit of the trustees, etc.; and, after directing the payment of all just demands against her estate, devised and bequeathed all the residue thereof, and all the remaining property so devised by the will of John Lawrence to the testatrix, describing it, unto her executor, George W. Appleton, in trust: (1) to keep the real estate in repair and rented, and all interest and taxes due thereon paid; (2) to sell certain real estate in New Jersey, and, in case of destruction of buildings on any other real estate, to sell the lots, and to invest the proceeds; (3) to pay from the net income certain legacies and annuities to children and grandchildren of the testatrix and others, all of said children being mentioned by name, with provisions that none of said annuities should continue longer than until the death of the last child of the testatrix who should survive her; and (4)

"Upon the decease of my last children surviving, to grant, convey and make over all real and personal estate, then remaining, to the New York Baptist Union for Ministerial Education, located at Rochester, New York, to be applied by the trustees of the said Union according to their discretion, to the support of German students studying for the Baptist ministry in the German department of the Rochester Theological Seminary under the control of said Union, each student to receive one hundred (100) dollars a year, and upon graduation twenty-five (25) dollars to be expended in books suitable for his use in such ministry, until the proceeds of such estate shall have been fully expended in such manner."

The will also provided as follows: "Upon the decease of my said executor or upon his properly certified desire to be relieved of said trust, I do hereby appoint the Philadelphia Trust Safe Deposit and Insurance Company of the city of Philadelphia, state of Pennsylvania, my executor and trustee for the like purposes."

The children of the testatrix who survived her were all living at the date of the death of John Lawrence. George W. Appleton, the executor and trustee, died December 1, 1886. The Philadelphia etc. Co., named by the testatrix as his successor, renounced the trust, and after December 1, 1886, the office of trustee, under the appointment made by Ann Appleton, had remained vacant.

### Statement of Facts.

After the death of George W. Appleton, Henry Pomerene, as surviving trustee under the will of John Lawrence, settled an account, embracing the entire trust estate under said will, and the income thereof, which account was referred to *Mr. Arthur Moore*, as auditor, the filing of whose report as such was delayed, in consequence of an application made to him by the petitioner's attorney, for a hearing.

The petitioner and the original respondents were named as beneficiaries in the will of Ann Appleton, or were representatives of persons so named. Henry Pomerene as trustee, and some of the other respondents, who claimed to take, not under the will of Ann Appleton, but directly under the fourth clause of the will of John Lawrence, objected by their answer to the granting of the prayers of the petition and asked that it be dismissed; denied the jurisdiction of the court; averred that the will of Ann Appleton was not a sufficient, proper and legal exercise of the power of appointment conferred upon her by the will of John Lawrence, and had no effect upon the limitation of the trust property thereunder; objected that certain persons interested under the alternative limitation, provided for by the will of John Lawrence, in default of an appointment by Ann Appleton, were not made parties to the proceeding; and denied that any cause was shown for the substitution of any trustee in the place of Henry Pomerene.

After hearing upon the petitions and answers, the court without opinion filed, made the following decree:

"And now, this —— day of June, 1889, this cause having been heard sur petitions filed and answers thereto made, this court appoint the Union Trust Company trustee under the power of appointment exercised in the will of Ann Appleton, deceased, pursuant to the will of John Lawrence, deceased, the donor of said power, and under the further general trust directed by the will of the said Ann Appleton, of all her property; and it is further ordered and directed that Henry Pomerene, who survives George W. Appleton, co-trustee with him, the said Pomerene, under the will of the said John Lawrence, forthwith grant and convey to the said company all real estate, and assign, transfer and deliver to it all personal property as to which said power of appointment was prescribed, and all property whatsoever, real or personal, which may be held by

him, the said Pomerene, trustee as aforesaid, saving and except-ing such moneys as are included in the accounts herotofore presented to the auditor appointed by this court to audit, settle and adjust the account filed by the said Pomerene, surviving trustee as aforesaid, and that the said Henry Pomerene and any other person in possession of any leases or other documents or things whatsoever, necessary or useful for the future man-agement of any part of said property hereinbefore designated, shall likewise forthwith deliver the same to said company for use in its capacity as trustee by virtue of the above appoint-ment."

Thereupon Henry Pomerene, surviving trustee etc., and Sam-uel Appleton, and others of the respondents, took this appeal, specifying that the court erred :

1. In appointing the Union Trust Company trustee.

2. In decreeing that the appointment by Ann Appleton was a valid exercise of the power conferred upon her.

3. In decreeing a conveyance of the trust property by Henry Pomerene, trustee, to the Union Trust Company.

*Mr. John G. Johnson* (with him *Mr. William A. Manderson*), for the appellants :

This case is directly ruled by Smith's App., 88 Pa. 494, in which an appointment by will, identically similar to that made by Mrs. Appleton, was held void as being within the rule pro-hibiting perpetuities. The appointment in the present case is bad for another reason : No power to declare uses and trusts was conferred upon Mrs. Appleton. Her authority under her father's will was to grant the real estate in fee, and her duty was to name the persons who should receive it for their own benefit. Instead of doing this, she undertook to convey it to her executor with directions to pay out of it certain annuities, etc., etc.

*Mr. E. Spencer Miller*, for Ann E. A. Griffin and the Union Trust Company, appellees :

1. The appointment made by Mrs. Appleton is not bad be-cause it declares trusts. A power to appoint the fee author-izes the appointment of any smaller interest, or of any legal

limitations within the scope of the power, which may be carved out of the fee: Bovey v. Smith, 1 Vern. 84; Crozier v. Crozier, 3 Dru. & War. 353; Farwell on Powers, 255; Sugden on Powers, 411. In no cases, even those where the exercise of the power was limited to a class, has the mere absence of express permission to declare trusts been held to exclude the authority: Boyles's Est., 5 W. N. 363; Fidelity etc. Co.'s App., 4 W. N. 265; Willis v. Kymer, L. R. 7 Ch. D. 181; Alexander v. Alexander, 2 Ves. Sr. 642. In the present instance, the power was unrestricted, and no actual interest could vest in any one save by virtue of the donee's action. In such case especially, no restriction as to the character of the estates to be appointed should be inferred.

2. The appointment would not break the rule against perpetuities. All the children of Mrs. Appleton were alive at the death of John Lawrence. The considerations bearing upon the point whether Smith's App., 88 Pa. 494, was rightly decided, are well known to this court: See Gray on Perp., §§ 523 et seq. We submit, only, that it is carrying to a great extent the test of inserting the donee's language in the donor's will, to hold that the meaning plainly attached to those words by the donee, whose words they were, is to be disregarded, and they are to be given a meaning they would have had years before, in the mouth of the donor, whose words they were not. But even if Smith's Appeal be sustained, this appointment is good. It does not violate the rule against perpetuities as declared in Hillyard v. Miller, 10 Pa. 334, approved in Smith's App., 88 Pa. 495, and Mifflin's App., 121 Pa. 205, since the estate given to the theological seminary, most of the legacies and annuities to others, and the legal title of the trustee, all vested at Mrs. Appleton's death: Gray on Perp., §§ 239, 389, et seq.

*Mr. J. Howard Gendell,* for the New York Baptist Union, etc., appellee:

1. If necessary, we would ask a reconsideration of Smith's App., 88 Pa. 492, and we may do so with propriety since it has been doubted in Coggins' App., 124 Pa. 10. It should be overruled, because it overlooks the distinction between the mode in which the execution of a power takes effect, and the interpreta-

tion of the language used in executing it. It is not Mrs. Appleton's language, but the true interpretation thereof, that is to be written into John Lawrence's will: See Gray on Perp., § 523 et seq. So, too, this decision overlooks the distinction suggested in Sugden on Powers, *471–474, between particular powers, in which the right to appoint is restricted to certain objects, and general powers, authorizing the donee to appoint to any one, the latter not being within the mischief against which the rule against perpetuities is intended to guard.

2. Smith's Appeal, however, does not apply : (a) Because by her children, Mrs. Appleton evidently meant the specific persons whom she had previously named as such, and therefore the case is within the exception stated in the opinion in Smith's Appeal ; (b) because the interests appointed to her children, and the remainder appointed to the Baptist Union, all vested at her death, and estates which vest and so become alienable, within or at the end of a life or lives in being at the creation of the power and twenty-one years after the termination of such lives, are not within the rule : Coggins' App., 124 Pa. 10 ; Ashhurst's Est., 17 W. N. 538 ; Gray on Perp., §§ 205, 322 ; Lewis on Perp., §§ 5–11 ; 1 Jarman on Wills, 252, 253 ; Kivern v. Williams, 5 Sim. 171. No contingency whatever is annexed to the gift over ; it is absolutely vested, and only its possession and enjoyment are postponed.

3. The appointment is not bad by reason of the gifts to trustees and the carving out of life-estates ; for a fee-simple includes all estates, legal and equitable, that can be carved out of it : 2 Bl. Com., *164, *165 ; Lancaster v. Dolan, 1 R. 231 ; Zane v. Kennedy, 73 Pa. 182 ; Watts's App., 78 Pa. 370 ; 1 Sugden on Powers, *496 ; Farwell on Powers, 255 ; Chance on Powers, 1217 ; Keefer v. Schwartz, 47 Pa. 503. Appointments in trust may be made even under a special power : Horwitz v. Norris, 49 Pa. 213 ; Boyles's Est., 5 W. N. 363 ; Pepper's App., 120 Pa. 235 ; Crompe v. Barrow, 4 Ves. Jr. 681 ; Alexander v. Alexander, 2 Ves. Sr. 642 ; Trollope v. Linton, 1 Sim. & Stu. 477 ; Willis v. Kymer, L. R. 7 Ch. D. 181 ; Friend v. Oliver, 27 Ala. 532 ; 2 Sugden on Powers, *273. A fortiori, is this true of a general power like the present, in which the donor regards the donee only. But the positions of the appellants, if sustained, would simply rule them out of court. The

estate has been appointed in fee to the Baptist Union, and even if the preceding particular limitations should fall, that appointment in fee must stand. The execution of a power may be good in part, although bad as to part: Horwitz v. Norris, 49 Pa. 213; Boyles's Est., 5 W. N. 363.

OPINION, MR. JUSTICE CLARK:

John Lawrence died domiciled in the city of Philadelphia, in the month of March, 1847. By his last will and testament he devised all his real and personal estate to certain persons therein named, in trust, to pay over the net income, during her lifetime, to his daughter, Ann Appleton; to assign the real estate, upon her decease, in fee to the appointees of her last will; or, failing such appointment, to pay over the same to and amongst her then living children, and the issue of children then deceased.

The trustees named in the will were removed by the Orphans' Court of Philadelphia county, during the lifetime of Ann Appleton, and George W. Appleton and Henry Pomerene were duly appointed trustees in their place. All the property, except certain real estate in Philadelphia, was lost by the devastavit of the original trustees, the remaining property being known as No. 43 South Second street, No. 221 Arch street, and Nos. 1127 and 1129 Pine street.

Ann Appleton, the donee of the power, died in March, 1883, domiciled in the state of New Jersey, leaving to survive her certain children, all of whom, it is conceded, were born during the lifetime of John Lawrence. By her last will and testament in writing, which was afterwards duly probated, she devised to George W. Appleton, and, in the event of his renunciation or decease, to the Philadelphia Trust etc. Company, certain property of her own, in Haddonfield, N. J., and also all that remained of the property over which she held the power of appointment under the will of John Lawrence, deceased, specifically referring thereto, in trust, to care for the same and collect the income thereof during the joint lives of her children, all of whom, as we have said, were living at the death of John Lawrence; to pay out of such income and the proceeds of sale of the Haddonfield property, if sold under the authority given, certain annuities mentioned, during that period, and, after the

expiration of said joint lives, to transfer the corpus of the property to the New York Baptist Union for Ministerial Education, which is the corporate name of what is known as the Rochester Theological Seminary.

George W. Appleton died December 1, 1886, and, the Philadelphia Trust etc. Company having renounced the trust, the office of trustee under the appointment in the will of Ann Appleton became vacant; whereupon Ann Eliza Griffin, one of the annuitants for life, presented her petition for the appointment of a successor to the trust created by the donee of the power. The appellants resisted this application, alleging that the execution of the power by Ann Appleton was invalid, and that Mrs. Griffin had therefore no standing in court to ask for the appointment of a trustee, the estate having passed to those entitled in remainder under the will of John Lawrence, deceased, as if Ann Appleton had died intestate. Their contention is, first, that the appointment violates the rule against perpetuities, and is therefore wholly void; and, second, that whilst the donee of the power, by its terms, could make a direct, immediate, and absolute appointment of the fee, she was not authorized to declare uses and trusts as contained in her will.

The rule, as stated in Gray on Perpetuities, is as follows: "No interest, subject to a condition precedent, is good, unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the interest." This rule is in force in all of the states where the principles of the common law prevail, excepting as it may have been modified by statute. In Pennsylvania it is unaffected by statute, only as it is modified by the acts of April 18, 1853, § 9, and April 26, 1855, § 12, which were suggested by the Thelluson Act, and operate only in restraint of accumulations. It seems to be conceded, and rightly too, we think, that, although Ann Appleton was domiciled at her death in New Jersey, the validity of the appointment, if there should be any conflict, is to be determined by the laws of Pennsylvania, which is the lex rei sitæ: any inquiry as to the law of New Jersey is therefore rendered unnecessary. The rule as stated, applies to interests in realty or in personalty, whether legal or equitable, but has no application to an interest which is vested, for a vested interest by its very nature cannot be subject to a condition precedent.

Opinion of the Court.

So, also, where a power of appointment is given, either by deed or will, the rule applies as well to the power as to the appointment. If a power can be exercised at a time beyond the limits of the rule it is bad. As, in the case at bar, however, the power must be exercised, if at all, in the lifetime of Ann Appleton, a life in being at the time of its creation, it cannot be impeached upon that ground; and, although the power, to be exercised by will only, is in the most general terms, it is not rendered bad by the fact that, within its terms, an appointment might possibly have been made which would be too remote: Gray on Perp., § 510. The direct and specific object of the power, according to its terms, is not to create a perpetuity; and, as the exercise of it is necessarily according to a certain discretion or latitude of choice in the donee, the security, which the law provides against the violation of the law of remoteness, is in the failure of any disposition which results from the abuse of that discretion: Lewis on Perp., 487. The question, therefore, is upon the validity of the appointment which was in fact made.

As a general rule, whether an appointment made in execution of a power is too remote, depends upon its distance from the creation of the power, and not from its execution: Gray on Perp., § 514; Lewis on Perp., 484. The exception is, when the power is general to the donee to appoint to whomsoever he may choose, either by deed or will; in such case, the donee has absolute control as if he had the fee, since he can appoint as well to himself as to any other person; he is practically the owner. In such case, the degree of remoteness is measured from the time of the exercise of the power, and not from the time of its creation: Bray v. Bree, 2 Cl. & F. 453; Sugden on Powers, 394, 683; Lewis on Perp., 483; Gray on Perp., §§ 477–524; Mifflin's App., 121 Pa. 205. But it will be seen that the power given to Ann Appleton is a power to be exercised by will only: her authority is not commensurate with the entire ownership; she could not appoint to herself, nor to any other person to take in her lifetime. She had not the absolute control; and, although the decisions are somewhat conflicting, and the question not free from doubt, the better opinion seems to be that the power must be regarded as special, and therefore the remoteness of the estate created by the appointment must be measured from the time of the creation of the power, which was at the death of John Lawrence:

See In re Powell's Trusts, 37 Law J. Ch. 188; Gray on Perp., § 526; and cases there cited. No estate or interest can be limited under a particular power, which would have been too remote if limited in the deed or will creating the power: Lewis on Perp., 488.

But, assuming that the remoteness of the appointment depends upon its distance from the creation of the power, it is plain that the several bequests and annuities made in the last will and testament of Ann Appleton, deceased, were to persons named, and in being, for distinct and separable sums of money by way of bequest or annuity out of the proceeds of her own and the income of the original trust estate.

The manifest purpose of the trust was to preserve the estate for the legatees and annuitants, for the life of her children and the survivor of them. At the death of the last child her surviving, this object would be fully attained; the annuities, whether to children, grandchildren, or to others, were then to terminate, and the entire trust-estate then remaining was to be conveyed to the New York Baptist Union, etc., in fee, to be applied as by the will is directed. We have, then, a devise to the trustees, in trust for the annuitants, for the life of the children of the donee and the survivor of them, with a remainder over in fee to the Baptist Union. Ann Appleton, as the donee of the power, had the right by her will to appoint to whom she chose: she certainly had a right to appoint to her children for life, or to trustees for their use for life, whether they were born before or after the decease of John Lawrence; and that, although the estate in remainder might be too remote, for the annuitants would take at her decease. " Where, under a power, interests are given by way of particular estate and remainder (including analogous gifts of personal estate), and the particular estate is limited to a valid object of the power, but the remainder is too remote, the appointment will not be wholly void, but only the gift in remainder. In such case, the interests, in respect of which there is an excess of the power, being distinct and separable from the valid portion of the appointment, there is no reason for involving the primary limitation in the remoteness of the remainder: " Lewis on Perp., 496; citing Adams v. Adams, Cowp. 651; Bristow v. Warde, 2 Ves. Jr. 336; Routledge v. Dorril, 2 Ves. Jr. 357; Brudenell v.

Elwes, 1 East 442 (7 Ves. 382); Butcher v. Butcher, 9 Ves. 382; Gray on Perp., §§ 232, 239, 242, citing Read v. Gooding, 21 Beav. 478 (4 De Gex, M. & G. 510), and other cases. See, also, Davenport v. Harris, 3 Gr. 168. In this respect we think the ruling in Smith's App., 88 Pa. 492, was wrong; for, although Ryan's daughter, Mrs. Smith, might have had children born after his decease, her children, whether born before or after Ryan's death, would have taken at her death, and the life-estates were therefore good, whereas it was held that her appointment was wholly bad. This statement of the law would seem to be decisive of the case at bar, for the proceeding is not by the party entitled in remainder, for a conveyance, but by one of the annuitants, for the appointment of a trustee for the purposes of the trust subsisting under the will of Ann Appleton, for the benefit of the annuitants, during the life of her children.

But the estate of the Baptist Union also vested at the death of Ann Appleton. The beneficiaries under her will are described by name; to each is given a separate and distinct sum by way of legacy, or annuity, to each one eo nomine, and, as we have said, their rights vested at their mother's death. The remainder was ready, at any time after the death of Ann Appleton, to come into the possession of the Baptist Union whenever and however the life-estate might determine: it was subject to no condition precedent, save the determination of the preceding estate: the contingency was not annexed to the gift, or to the person entitled, but to the time of enjoyment merely, and, according to all the cases, the remainder must be treated, not as a contingent, but as a vested estate. If this be so, the rule against remoteness is satisfied; for, not only the particular estate, but the remainder supported by it, took effect within lives in being at the creation of the power. "The particular feature," says Mr. Lewis, in his treatise on Perpetuities, "in limitations of future interests, with which the rule against perpetuities is connected, is the time of their vesting, or, in other words, of their becoming interests transmissible to the representative of the grantee, devisee, or legatee, and disposable by him. When they are so limited as necessarily to allow this quality, within the legal period of remoteness, they are free from objection in reference to the perpetuity rule." Upon

this question we may also refer to Mifflin's App., 121 Pa. 205: " If a remainder is vested, that is, if it is ready to take effect whenever and however the particular estate determines, it is immaterial that the particular estate is determinable by a contingency which may fall beyond a life or lives in being: " Gray on Perp., § 209. Perpetuities are grants of property wherein the vesting of an estate is unlawfully postponed: Philadelphia v. Girard's Heirs, 45 Pa. 26; Barclay v. Lewis, 67 Pa. 316. The main question decided in Smith's Appeal is therefore not involved in this case. The accuracy of that decision has been somewhat doubted by the learned judge who wrote it: Coggins' App., 124 Pa. 10; but the subject can only be further considered when a proper case is presented.

Nor do we think the appointment is invalid, because in the exercise of the power the donee, without special direction of John Lawrence, the testator, to that effect, in appointing the fee declared certain uses and trusts for life, with remainder over. The power conferred upon Mrs. Appleton by her father's will was " to grant and convey the real estate in fee," " in such parts or shares " as she by her last will should direct. The power is wholly unrestricted: the entire discretion is committed to the donee of the power, to grant the fee in such form and to such persons as she chose. In the exercise of that power she did appoint the fee, and we think she was authorized, observing the rule against remoteness, to declare such uses and trusts for life as would best carry out her wishes with respect to the ultimate disposal of the property. No authorities have been cited to any different effect. On the contrary, appointments in trust, even under restricted powers, would seem to have been sustained, and, as illustrations of this, we have been referred to Alexander v. Alexander, 2 Ves. Sr. 642, Trollope v. Linton, 1 Sim. & S. 477; Crompe v. Barrow, 4 Ves. 681; Willis v. Kymer, 7 Ch. Div. 181; 2 Sugden on Powers, 273, 274.

> The decree of the Orphans' Court is affirmed, and the appeal dismissed at the cost of the appellants.