## Johnson's Estate.

*Will—Power of appointment—Improper exercise of power—Estoppel—Res judicata.*

1. The sole member of a class among whom a power to appoint is limited takes the whole estate in default of a proper appointment.

2. Where à testator leaves an estate to a brother for life, and after the latter's death to the proper use and behoof of his child or children, for such estate as he may by last will appoint, and, in default of appointment, to the child or children whom the brother might leave surviving him, and the brother, in the exercise of the power, leaves a life estate to his only child, a son, with remainder to the latter's children, the son takes an estate in fee; and such fee is not defeated because, at the audit of the original testator's estate, he accepted, without protest, awards made to him on the theory that he possessed a life estate.

3. In such case, the attempted designation of estates, beyond the life estate in the brother's only son, was void for want of power in the brother to make them, and there was default of appointment to this extent. Under the circumstances, the only son of the brother,

being entitled to the remainder, as well as his designated life interest, took the whole estate.

Argued January 8, 1923. Appeals, Nos. 108-11, Jan. T., 1923, by Albert G. Johnson et al., from decree of O. C. Phila. Co., Oct. T., 1887, No. 214, dismissing exceptions to adjudication, in estate of William Johnson, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART and SCHAFFER, JJ. Affirmed.

Exceptions to adjudication of HENDERSON, J.
The opinion of the Supreme Court states the facts.
Exceptions dismissed in opinion by GEST, J.
Albert G. Johnson et al., a brother and the children of a deceased brother of Wm. Johnson, appealed.

*Error assigned,* inter alia, was decree, quoting it.

*C. Oscar Beasley,* for appellants.—There is no possibility in the instant case of a conjunction of two estates or of an equitable fee: Pepper's App., 120 Pa. 235.

That no alternative disposition (in default of appointment) can supplant an appointment, concededly valid or made valid by judicial decree, has been definitely settled by the two rulings in Lafferty's Est., 209 Pa. 44, and 230 Pa. 496.

It seems to be well settled that, added to the prior gift of the whole estate to the taker direct, any subsequent restriction against alienation must be void, and the decisions have not always permitted this restriction, even where attempted to be made effective by the interposition of a trustee.

In Hays v. Viehmeier, 265 Pa. 268, the denial of the power to restrict alienation is extended to a trust estate as well.

No obstacle is in the way of the donor's alternative disposition to the brothers on the assumption of Elwood's life estate only under the power.

The 1909 confirmation of the appointment of the share in question in trust (beyond the $10,000 given him outright) for Elwood for life, was, thereafter, the undisputable "law of the case": Whitman's Est., 248 Pa. 285; Ewalt v. Devenhill, 257 Pa. 383; Newbold's Est., 65 Pa. Superior Ct. 151.

*Thomas Raeburn White,* with him *Alexander Henry Carver,* for appellee.—The power of appointment being limited to a class of which Elwood was the only member, he was entitled to a fee: Horwitz v. Norris, 49 Pa. 213; Russell v. Kennedy, 66 Pa. 248; Neilson's Est., 17 W. N. C. 158; Fotterall's Est., 2 Pa. Dist. R. 146; Gardette's Est., 13 W. N. C. 315; Fell's Est., 14 Pa. Dist. R. 327; Pepper's App., 120 Pa. 235.

There was nothing in any prior adjudication which prevents Elwood from claiming a fee: Lewis's Est., 269 Pa. 379; McClellan's Est., 221 Pa. 261.

Opinion by Mr. Chief Justice Moschzisker, February 12, 1923:

William Johnson died in 1887, leaving a will, duly probated, by which he directed certain of his real estate to be held in trust to pay the income therefrom to his brother Walter for life; after the latter's death, in trust for "the only proper use and behoof of such child or children of......Walter, and for such estate or estates as he may by last will......appoint; and, in default of such appointment," for the "child or children and issue of deceased children" which Walter might leave surviving him; or, in the event of his dying without leaving children or grandchildren, then to those of testator's brothers who might survive Walter.

Walter died in 1909, after having made a will, duly probated, whereby, in exercise of his power of appointment, he gave to Elwood T. Johnson, his son and only child, $10,000 absolutely, and the income for life on the residue of the William Johnson property, which he pro-

vided should be placed in trust. This income was directed to be paid, after Elwood's death, "to his child or children, or the issue of any deceased child or children" until they reached twenty-one, when they were to receive the principal. Finally, should Elwood die without issue, the principal was given to such of Walter's brothers as might be entitled to take under the will of the original testator.

Two trustees' accounts (one in 1909 and the other in 1915) have been filed in the estate of William Johnson, since the death of Walter, and both were confirmed. At each audit Elwood requested that the $10,000 given to him be retained as part of the general trust estate appointed by his father, Walter Johnson, in his will, and did not, in any manner or to any extent, question the validity of that appointment.

Elwood died in 1921 without issue; he willed his entire estate to his wife, Adah E. Johnson, whom he appointed executrix. His death necessitated another trustees' account in the estate of William Johnson and distribution of the principal, from which he had enjoyed the income during life, and this was awarded to Elwood's executrix; from that adjudication, confirmed by the orphans' court in banc, the present appeal is brought.

Appellants are a brother and the children of a deceased brother of William Johnson. It is their contention that, even though the exercise of the appointment by Walter may have been void originally, or at least as to the attempted provisions for children and others after Elwood's death, yet since the adjudications of 1909 and 1915 treated the appointment as valid, and Elwood assented to the judicial determinations then reached, the validity of such appointment should now be considered res judicata; and Elwood, by accepting the life estate, is claimed to have divested himself of any further interest in the corpus, which, at his death without issue, was left free to go to appellants. Elwood's estate, it is contended, is bound by his acquiescence in the prior awards.

We cannot agree with these contentions. There is no room to claim validity for Walter's attempt at appointment beyond the designation of Elwood, who, in default of a proper appointment, took the whole estate as the sole member of the class among whom Walter had the right to appoint shares under the will of the original testator: Wickersham v. Savage, 58 Pa. 365; Pepper's App., 120 Pa. 235. The auditing judge correctly said, "He [Walter] left to survive him but one child [Elwood], who, being the sole member of the designated class [named in the will of the original testator], had a vested interest not to be divested by an appointment to a stranger"; in other words, admitting Walter had power to subject the property to the limitations of a trust for his son's protection during the latter's life, he lacked power to appoint beyond that period.

To elaborate what we have just said: Under the testament of William, Walter had the right to appoint to his children, and to no one else; appellants could take only if Walter died without children. Besides, if Walter left children surviving, but failed to appoint to them, the latter would take under the original will. As a matter of fact, Walter had only one child, Elwood (born during the life of the original testator) and to this child he appointed for life only. The estates attempted to be designated beyond the life of Elwood were void, for want of power in Walter to make them, and there was a default of appointment to this extent. Under these circumstances, Elwood, as the only child of Walter, being entitled to the remainder, as well as his designated life interest, took the whole estate.

It is not questioned that Elwood had at least a life interest, and whether that interest was validly in trust is now of no moment; he evidently preferred to allow the property to be thus protected so long as he lived, for, with knowledge of his right to remove from the trust the $10,000 at least, he allowed it to remain. The point is, Did he have more than a life interest? and, as involved

in that point, What became of the estate at his death? The most convenient, if not appropriate, time to raise and settle these questions was at the audit of the account filed after Elwood's death; and he, for reasons of his own, probably preferred they should then be formally adjudged.

As for the contention of res judicata, we agree with the opinion of the court below that the prior adjudications "did not go further than to determine the validity of the trust for the life of Elwood, if they went that far."

The decree appealed from is affirmed at cost of appellants.